# Exhibit A

# Superior Court of the District of Columbia

## CIVIL DIVISION - CIVIL ACTIONS BRANCH
### INFORMATION SHEET

Edward W. Lyle
_____
Plaintiff(s)

vs

District of Columbia
_____
Defendant(s)

Case Number: ___2023-CAB-007041___

Date: __10 November 2023__

☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| **Name:** *(Please Print)* Edward W. Lyle, pro se | **Relationship to Lawsuit** |
| **Firm Name:** | ☐ Attorney for Plaintiff |
| | ☑ Self (Pro Se) |
| **Telephone No.:** (202) 333-4280   **DC Bar No.:** | ☐ Other: _____ |

**TYPE OF CASE:** ☑ Non-Jury   ☐ 6 Person Jury   ☐ 12 Person Jury
**Demand:** $ 4,716.00   Other: Declaratory & Injunctive Relief

**PENDING CASE(S) RELATED TO THE ACTION BEING FILED**
Case No.:_____ Judge: _____ Calendar #:_____

Case No.:_____ Judge: _____ Calendar #:_____

---

**NATURE OF SUIT:**   *(Check One Box Only)*

**CONTRACT**
☐ Breach of Contract
☐ Breach of Warranty
☐ Condo/Homeowner Assn. Fees
☐ Contract Enforcement
☐ Negotiable Instrument

**COLLECTION/INS. SUB**
☐ Debt Collection
☐ Insurance Subrogation
☐ Motion/Application for Judgment by Confession
☐ Motion/Application Regarding Arbitration Award

**EMPLOYMENT DISPUTE**
☐ Breach of Contract
☐ Discrimination
☐ Wage Claim
☐ Whistle Blower
☐ Wrongful Termination

**REAL PROPERTY**
☐ Condo/Homeowner Assn. Foreclosure
☐ Declaratory Judgment
☐ Drug Related Nuisance Abatement

☐ Ejectment
☐ Eminent Domain
☐ Interpleader

☐ Other
☐ Quiet Title
☐ Specific Performance

☐ **FRIENDLY SUIT**
☐ **HOUSING CODE REGULATIONS**
☐ **QUI TAM**
☐ **STRUCTURED SETTLEMENTS**

**ADMINISTRATIVE PROCEEDINGS**
☐ Administrative Search Warrant
☐ App. for Entry of Jgt. Defaulted Compensation Benefits
☐ Enter Administrative Order as Judgment
☐ Libel of Information
☐ Master Meter
☐ Petition Other

☐ Release Mechanics Lien
☐ Request for Subpoena

**MALPRACTICE**
☐ Medical – Other
☐ Wrongful Death

**AGENCY APPEAL**
☐ Dangerous Animal Determination
☐ DCPS Residency Appeal
☐ Merit Personnel Act (OEA)
☐ Merit Personnel Act (OHR)
☐ Other Agency Appeal

☐ **APPLICATION FOR INTERNATIONAL FOREIGN JUDGMENT**

CV-496/February 2023

# Information Sheet, Continued

**CIVIL ASSET FORFEITURE**
- ☐ Currency
- ☐ Other
- ☐ Real Property
- ☐ Vehicle

**NAME CHANGE/VITAL RECORD AMENDMENT**
- ☐ Birth Certificate Amendment
- ☐ Death Certificate Amendment
- ☐ Gender Amendment
- ☐ Name Change

**TORT**
- ☐ Abuse of Process
- ☐ Assault/Battery
- ☐ Conversion
- ☐ False Arrest/Malicious Prosecution
- ☐ Libel/Slander/Defamation
- ☐ Personal Injury
- ☐ Toxic Mass
- ☐ Wrongful Death (Non-Medical Malpractice)

**GENERAL CIVIL**
- ☐ Accounting
- ☐ Deceit (Misrepresentation)
- ☐ Fraud
- ☐ Invasion of Privacy
- ☐ Lead Paint
- ☐ Legal Malpractice
- ☐ Motion/Application Regarding Arbitration Award
- ☑ Other - General Civil

- ☐ Product Liability
- ☐ Request for Liquidation
- ☐ Writ of Replevin
- ☐ Wrongful Eviction

**CIVIL I/COMPLEX CIVIL**
- ☐ Asbestos

**MORTGAGE FORECLOSURE**
- ☐ Non-Residential
- ☐ Residential

**STATUTORY CLAIM**
- ☐ Anti – SLAPP
- ☐ Consumer Protection Act
- ☐ Exploitation of Vulnerable Adult
- ☐ Freedom of Information Act (FOIA)
- ☐ Other

**TAX SALE FORECLOSURE**
- ☐ Tax Sale Annual
- ☐ Tax Sale Bid Off

**VEHICLE**
- ☐ Personal Injury
- ☐ Property Damage

☐ **TRAFFIC ADJUDICATION APPEAL**

☐ **REQUEST FOR FOREIGN JUDGMENT**

---

_Filer/Attorney's Signature_

10 November 2023

Date

CV-496/February 2023

eFiled
11/16/23 12:30AM
Superior Court
of the District of Columbia

## DISTRICT OF COLUMBIA SUPERIOR COURT
## CIVIL DIVISION

EDWARD W. LYLE
1805 45th Street N.W.
Washington D.C. 20007,

     Plaintiff

     v.

DISTRICT OF COLUMBIA,
  a municipal corporation,

  Serve: Office of the D.C. Attorney
General, Civil Division, Stephanie
Litos, Deputy Attorney General
400 6th Street NW
Washington, D.C. 20001

     Defendant

Case No. 2023-CAB-007041

# COMPLAINT
## For Declaratory, Injunctive and Other Relief

### I.    INTRODUCTION

This suit arises out of warrantless inspections carried out earlier this year at the Plaintiff's home by the Defendant's Department of Buildings ("DOB") without effective notice being given to the Plaintiff regarding the date and time for such inspections. Notice to a homeowner and an opportunity for the homeowner to be present during inspections is not required under the authorities by which DOB conducted its inspections, and for that reason those authorities fail to meet current search and seizure requirements established by the U.S. Supreme Court under the Fourth Amendment to the U.S. Constitution.

The Plaintiff also contends that DOB's failure to provide him timely notice of the inspections violates his procedural due process right under the Fifth and Fourteenth Amendments to the U.S. Constitution to have a fair opportunity to contest any charges against him resulting from those inspections.

The Plaintiff therefore seeks a declaration from this Court that the legal authorities under which DOB conducted inspections of his home are unconstitutional and of no force or effect in the District. The Plaintiff also seeks an injunction against DOB's further inspections of residential properties unless and until these legal authorities are amended to pass muster under the Fourth Amendment. Finally, the Plaintiff requests a Court order requiring the refund of a $4,716.00 fine he paid as a result of DOB's unlawful inspections.

## II.     PARTIES

1.      Plaintiff Edward Lyle is a citizen of the District of Columbia ("District" or "D.C.").

2.      The District is a municipal corporation empowered to sue and be sued and is the local government for the territory constituting the seat of the government for the United States.

## III.     JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction of this case pursuant to D.C. Code § 11-921.

4.      This Court has personal jurisdiction over the Defendant since it is the corporate municipal entity empowered to be sued in this jurisdiction.

5.      Venue is appropriate in this Court since all actions relevant to this matter occurred in the District.

## IV.   FACTUAL ALLEGATIONS

6.      On a date in late February or early March 2023, the Defendant, acting through its Department of Buildings ("DOB"), received a complaint from a tenant in the Plaintiff's residence at 1805 – 45th Street N.W., Washington D.C. 20007 ("Residence"), about allegedly inadequate heat and other conditions in that Residence.

7.      On the morning of March 3, 2023, DOB's Customer Service Team emailed the Plaintiff that a DOB representative would be coming between 2:00 and 4:00 p.m. that day to inspect the Residence.

8.      Upon receiving this email, the Plaintiff retrieved a "heat gun" – i.e., a device used to measure ambient heat in an indoor structure – and waited for DOB's inspector.

9.      For the rest of that day, DOB's inspector did not come to the Residence, and no one from DOB called to explain why or to reschedule the inspection.

10.     DOB's inspector also did not come to the Residence in the next three days.

11.     It was not until the following Tuesday, March 7, 2023 – four days after the announced date for the inspection - that DOB's inspector came to the Residence and reviewed conditions in it. The Plaintiff, however, was not contacted at that time by either the tenant, DOB's inspector, or any other representative of DOB about the approximate rescheduled time that the inspector would arrive at the Plaintiff's Residence.

12.     Although no one in DOB had communicated with the Plaintiff since March 3rd to provide a revised date and time when DOB's inspector would be arriving, the inspector was communicating with the Plaintiff's tenant during this period about his arrival time.  Upon the inspector's arrival on March 7th, the tenant let him in and was with him during the entirety of his inspection.

3

13.     During his inspection, the inspector went through the first floor and parts of the second floor.  The inspector did not go to the basement, where the Plaintiff was working in an office while the inspector was on the floors above.

14.     The inspector found that one point near the rear bay window in the dining room of the Residence was slightly below the minimum required by the District at that point in the year, and DOB issued a Notice of Infraction ("NOI") for that alleged violation.

15.     At the point where the inspector found the Plaintiff to be in violation of the minimum heat requirement, the Plaintiff had maintained an electric space heater to provide additional heat whenever the area near the bay window was being used.  The tenant, however, had removed that heater without the Plaintiff's authorization and without notice to the Plaintiff.  The tenant had taken the heater into a first floor room that the tenant had unilaterally appropriated as a bedroom for herself and then, over time, burned it out.

16.     An administrative law judge in the District's Office of Administrative Hearings later fined the Plaintiff $4,716.00 for the heat violation.

17.     Similarly, the Plaintiff received another notice from DOB's Customer Response Team on August 22, 2023 that a DOB representative would be coming to inspect other conditions for which the same tenant had filed a second complaint.

18.     That second notice stated that DOB would be arriving between 7:00 a.m. and 9:00 a.m. on the following day.  At that time, the Plaintiff was again present and waiting for the inspector to appear at the Residence.

19.     As before, however, no representative of DOB appeared at the designated time, and no one contacted the Plaintiff to explain why or to reschedule the inspection.  The Plaintiff then inquired

on-line at DOB's website when the inspector would be arriving, but the DOB chat person did not have that information.

20.     On the next day, the Plaintiff received an e-mail from Gloria Shelby of DOB stating that the inspection had been moved 15 days to Wednesday, September 6, 2023.

21.     On September 6, 2023, the Plaintiff was again waiting, but DOB's inspector did not arrive at any time that day, and the Plaintiff received no word from DOB about a rescheduled inspection.

22.     Instead, DOB's inspector came the next day and conducted an inspection, with the Plaintiff again was in the basement unaware of the inspection that was proceeding above him.  The results of this inspection, however, are not at issue here.

## V.     STATEMENT OF LAW

### A.     The Fourth Amendment

23.     The Fourth Amendment to the U.S. Constitution states as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

24.     As the U.S. Supreme Court declared in *Camara v. Municipal Court,* 387 U.S. 523, 528, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (U.S. 1967), "the basic purpose of this Amendment… is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.  When a government inspector knocks on the door, "the occupant has no way of knowing whether enforcement of the municipal code involved requires inspection of his premises, no way of knowing the lawful limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization." *Id.,* at 532.  Such inspections by their very

nature "jeopardize the self-protection interests of the property owner," *Id.* at 531, and they are of even more concern when the property inspected is residential rather than commercial. *Donovan v. Dewey,* 452 U.S. 594, 598, 69 L.Ed. 2d 262, 101 S.Ct. 2534 (1981). Indeed, "[t]he historical judgment… is that unreviewed executive discretion may yield too readily to pressures to obtain desired evidence and overlook potential invasions of privacy and protected speech." *United States v. U.S. District Court,* 407 U.S. 297, 317 (1972).

25.    For this reason, "one governing principle, justified by history and by current experience, has consistently been followed:  except in certain carefully defined classes of cases, a search of private property without private consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Camara, supra,* at 528-29.  In issuing or declining to issue such a warrant, "[t]he magistrate's duty is to assure that the proposed search will be reasonable, a determination that requires inquiry into the need for the intrusion on the one hand, and the threat of disruption to the occupant on the other." *Michigan v. Tyler,* 436 U.S. 499, 507, 98 S. Ct. at 1948, 56 L. Ed. 2d 486 (1978).  "A magistrate can guard against improper searches by keeping the regulatory invasion to a minimum." *See v. Seattle,* 387 U.S. 541, 544-45, 18 L. Ed. 2d 943, 87 S. Ct. 1737 (1967).

26.    A warrant issued by a magistrate therefore "provide[s] assurances from a neutral officer that an inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria." *Marshall v. Barlow's,* 436 U.S. 307, 323 (1978).  A warrant also "advises the owner of the scope and object of the search, beyond which limits the inspector could be expected not to proceed." *Id.*

27.    Where an inspector has reason to believe that an emergency exists in a property, the courts have sustained warrantless administrative searches where "reasonable legislative or administrative standards" are in place for conducting inspections. *Camara, supra,* at 538.  The

6

question in each instance, however, is whether the statute's inspection program provides a constitutionally adequate substitute for a warrant requirement. *Donovan,* at 603.

28.     This requirement for reasonable controls on administrative inspectors, particularly when entering private homes, pertains even in traditionally-regulated industries, where the Court has usually permitted warrantless searches. *Id.,* at 604.  Even in these instances, the Supreme Court has emphasized that Fourth Amendment interests are still at stake "since such an inspection does in fact jeopardize the 'self-protection' interests of the property owner." *Camara,* at 531.

**B.     The D.C. Statute**

29.     In the District, rental housing may be inspected under D.C. Code § 42-3509.08 ("Inspection of rental housing").  This statute provides inspection authority to D.C. officials "for the purpose of determining whether any [rental housing] is in compliance with applicable housing rules or construction code rules...." *Id.*  For this purpose, D.C. officials "may enter upon and into any [rental housing] in the District, during all reasonable hours, to inspect the same." *Id.*  This statute also specifies, however, that inspectors may not enter any portion of rental housing under a <u>tenant</u>'s exclusive control without the tenant's permission, or a valid search warrant, or a reasonable basis to believe that entry is needed immediately to prevent imminent danger, or the tenant's permission. Guidance is also provided for a court's issuance of a search warrant, and a fine not exceeding $100 is authorized to be imposed on anyone interfering with an authorized inspection.

30.     No guidance is provided under this statute, however, concerning the interests of the owner of residential property when inspections are conducted.

**C.     The PMC Regulations**

31.     The NOI in this proceeding was issued for a violation of the D.C. Property Management Code, of which the residential inspection provisions are found at 12G DCMR §§ 104.3

and 104.4 ("PMC Regulations").  Under this authority, DOB officials, who are the "Code Officials"
for purposes of PMC enforcement, may "enter the premises, or any part thereof, at reasonable times
to inspect or to perform the duties imposed by the [PMC], subject to applicable law."  PMC §104.3.
Before entering, the DOB representative must present his credentials, although it is not specified to
whom.  *Id.*  Also, the DOB representative must observe the same restrictions on inspecting space
under a tenant's exclusive control as are included under .D. C. Code § 42-3509.08, discussed above.
*Id.*

     32.     Here again, no guidance is provided concerning the interests of the owner of
residential property when inspections are conducted.

## VI.   ARGUMENT

**A.**    **D.C. Code § 42-3509.08 and the PMC regulations Violate the Fourth Amendment**
        **Facially in Failing to Include Adequate Protections for   Homeowners During**
        **Inspections of Rental Housing in the District.**

     33.     DOB's inspection of the Plaintiff's home on March 7, 2023 was a "search" within the
meaning of the Fourth Amendment in that DOB was searching for violations of pertinent D.C.
statutory and administrative requirements. *See V. Seattle, supra,* at 542-5.  As discussed above,
courts interpreting the Fourth Amendment have consistently been concerned for the privacy and
safety of homeowners during regulatory searches of their properties.  The courts have consistently
noted that the expectation of privacy is greater in the sanctity of an individual's home than in a
commercial or other facility outside the home.  *Caniglia v. Strom,* 141 S. Ct. 1596, 1599, 209 L. Ed.
2nd 604, 2021 U.S. Lexis 2592 (2021); *Donovan v. Dewey, supra,* at 598; *Silverman v. United States,*
365 U.S. 505, 511, 5 L. Ed. 2d 734,  81 S. Ct. 679 (1961) ("At the very core" of the Fourth
Amendment "stands the right of a man to retreat into his own home and there be free from
unreasonable governmental intrusion.").

34.     As noted above, courts have insisted that inspectors obtain a search warrant before entering a private residence or business.  To obtain a warrant, inspectors must demonstrate that their proposed search will not go beyond what is reasonably necessary to achieve the legitimate objectives of their search. *See,* at 544.

35.     Where the courts have allowed searches without warrants, it has often been where the homeowner has, as in the present case, applied for a license to conduct a certain activity.  As the D.C. Court of Appeals has said, a person consents to an inspection of his premises for compliance with applicable regulatory requirements when he applies for a housing business license. *Holmes v. District of Columbia Board of Appeals & Review,* 421 A.2d 27, 31 (1980) (citing *John D. Newman Properties, Inc. v. District of Columbia Board of Appeals and Review,* 268 A.2d 605 [1970]).  In consenting to being inspected, the homeowner has an expectation that such a warrantless inspection is likely to occur in the future.

36.     However, in creating rental housing programs in which homeowners must apply for a license and thereafter assume they will be inspected without warrants, governments do not have carte blanche authority to operate those programs in any way they like.  More particularly, their inspectors do not have carte blanche to conduct their inspections in any way they like.  Rather, governments must establish "reasonable legislative or administrative standards for conducting an area inspection" if those inspections are to be done without a warrant. *Camara,* at 538; *Michigan v. Tyler, supra,* at 506. [1]  Those inspections must be part of a clearly-defined regulatory program that is reasonable in providing protections against arbitrary invasions of both residential and commercial facilities where the owner's privacy and security may be affected.  For instance, in *Donovan v Dewey, supra,* 452 US

---

[1] Warrantless administrative searches are also authorized where emergencies exist, but DOB cannot argue here that an emergency existed in the Plaintiff's home when it delayed its March 3, 2023 inspection of that home by four days until March 7, 2023 and its announced August 22, 2023 inspection by 16 days until September 7, 2023.

9

594, 69 L Ed 2d 262, 101 S Ct 2534 (1981), the Supreme Court held that the Fourth Amendment protections contained in the Federal Mine Safety and Health Act ("Act"), 30 U.S.C. § 801 *et seq.,* for inspections of mines constituted a constitutionally adequate substitute for a warrant requirement. 452 US at 605. The Act, said the Court, "provides a specific mechanism for accommodating any special privacy concerns that a specific mine operator might have." *Id.,* at 604. The Act specifically prohibits inspectors from forcibly entering mines and requires a judicial hearing at which the owner may appear and object to entry before any authorization is granted. 30 U.S.C. § 818(a). The Act also provides that both the operator and miners' representatives may accompany the inspector while the search is underway. *Id.* § 813(f). In this way, the Act implicitly requires that both the operator and miners' representatives be notified in advance of the inspection and have an opportunity to be present when it begins. Both the operator and miners' representatives also have the opportunity to participate in pre- and post-inspection conferences with the inspector. *Id.*

37.     The Court cited these Fourth Amendment legislative protections as necessary even though the mining industry is heavily regulated. It has a "notorious history of serious accidents and unhealthful working conditions." 452 U.S. at 603. "The regulation of mines [that the Act] imposes is sufficiently pervasive and defined that the owner of such a facility cannot help but be aware that he 'will be subject to effective inspection'." *Id.*

38.     Even here, where a property owner has the expectation that he will be inspected because of the kind of business he is running, the Supreme Court has held that protections for the property owner must still be in place if a warrantless search is to be conducted. If the Supreme Court is requiring these legislative or administrative protections for property owners in the context of an industrial mining operation, its insistence on such protections is even greater in private homes where, as discussed above, the owner has a much greater expectation of privacy.

39.     The fact that owners of rental properties in D.C. must be licensed and are fully expecting to be inspected, therefore, does not excuse the District from the requirement to establish "reasonable legislative or administrative standards for conducting an area inspection" that include protections for the homeowner if those inspections are to be done without a warrant.  Put another way, the owners of rental properties still have Fourth Amendment privacy and security interests like all other owners of residential properties in the District, and those concerns must be addressed by appropriate standards for conducting inspections before those inspections may be undertaken without a warrant.

40.     It is instructive to compare the extensive inspection provisions in the Federal Mine Safety and Health Act to those under which the D.C. Department of Buildings conducted a search of the Plaintiff's home on March 7, 2023.  As noted above, DOB's search of the Plaintiff's home was based, first, on D.C. Code § 42-3509.08 (Inspection of rental housing), which provides a general authorization for D.C. inspectors to conduct regulatory searches of rental housing to determine compliance with housing and construction code standards.  DOB's inspection was also based on the D.C. Property Management Code, which similarly provides a general authorization for an inspector to "enter the premises, or any part thereof, at reasonable times to inspect or [perform other authorized duties]."

41.     More notable, however, is what§ 42-3509.08 and the PMC Regulations do not provide.  First, neither § 42.3509.08 nor the PMC Regulations require that the owner of the property in question be given timely notification of the actual date and time that the inspection is to be conducted.

11

42.     Second, while the PMC requires the inspector to show his credentials, it does not specify to whom those credentials must be shown or authorize the property owner to refuse inspection if the credentials are not in order.  This requirement to show credentials is missing from § 42.3509.08,

43.     Third, neither § 42.3509.08 nor the PMC authorizes the homeowner to follow the inspector during the search to assure that the inspector does not exceed the legitimate physical or other bounds of his inspection or engage in other unauthorized activities such as damaging or removing personal property of the homeowner.

44.     Fourth, neither § 42.3509.08 nor the PMC authorize the homeowner to collect evidence possibly refuting that of the inspector while the inspection is underway.  As discussed below at greater length, the only time a homeowner often will be able to gather strong evidence will be <u>during the inspection.</u>

45.     In short, the legal authorities under which DOB conducted its inspections of the Plaintiff's home provide exactly <u>no</u> authority for the property owner to take reasonable steps to protect his property or to challenge the merits of an inspection while it is underway.  Even if one were to argue that rental properties are a highly regulated industry in which regulatory inspections are to be expected, the Supreme Court has made no exception for such properties in its requirements for warrantless searches.  To satisfy Fourth Amendment requirements for warrantless searches of D.C. residential properties, DOB must operate under a legal authority like the Mine Safety and Health Act that provides appropriate protections for property owners.

46.     Since the absence of such protections render these authorities inadequate to meet current Fourth Amendment requirements, § 42.3509.08 and the PMC Regulations are

unconstitutional, and any inspection that has been conducted under them is unlawful and of no force and effect.

**B.     DOB's Inspections of the Plaintiff's Residence Also Violated The Plaintiff's Due Process Rights Under the Fifth and Fourteenth Amendments.**

47.     Beyond the fact that the legal authorities under which DOB conducted its inspections of the Plaintiff's home do not satisfy the requirements of the Fourth Amendment, the manner in which DOB conducted those inspections violated the Plaintiff's due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution.

48.     As noted above, DOB gave notice on March 3, 2023 of its intent to inspect the Plaintiff's home between 2:00 and 4:00 p.m. on that day.  The Plaintiff was there at that time waiting for DOB to arrive, but DOB never arrived that day or the ensuing three days.  According to the Notice of Infraction that DOB later issued, DOB arrived around noon four days later on March 7, 2023.  No one in DOB ever notified the Plaintiff of this change in arrival day and time.  With the assistance of the tenant who had called DOB to institute the inspection, DOB's inspector entered the Plaintiff's house and went through the first and second floors of the house in a manner unknown to the Plaintiff.  At that time, Plaintiff was in his basement office and totally unaware of what was going on upstairs.  The inspector did his inspections and then departed the Plaintiff's house.  Plaintiff does not know how long the inspector was in his house or where the inspector went in it.

49.     As if to emphasize its total lack of concern about timely notifying the Plaintiff about when his property would be inspected, DOB notified him again on August 22, 2023 that his property would be inspected between 7:00 a.m. and 9:00 a.m. the next day.  True to form, DOB did not appear the next day.  When the Plaintiff inquired, DOB said the inspection would be held on September 6, 2023.  That day came and went, however, and DOB did not arrive.  Instead DOB chose to come on the following day.  No one in DOB notified the Plaintiff of this change.

50.     DOB was perfectly capable in both March and September 2023 of informing the Plaintiff of any change in its arrival time because DOB had the Plaintiff's email address and could have sent a message that would have reached the Plaintiff immediately in his basement office.

51.     If DOB should argue that its inspector or others in DOB were communicating with the Plaintiff's tenant about the inspector's arrival and inspection on both March 7 and September 7, 2023 and that such communications were constructive notice to the Plaintiff about the inspector's arrival, they were not. The Plaintiff had not designated his tenant as his agent before, during, or after the inspector's arrival and inspection. Far from it. At the time of the inspector's arrival on March 7, 2023 and again on September 7, 2023, the Plaintiff had an action pending [2] in the Landlord Branch of the D.C. Superior Court for Tenant's eviction after four years of paying no rent or her share of utility costs and living in the house in a manner that violated both her lease and D.C. health regulations. It is noteworthy that, after living in the house this way for four years, the tenant had complained to DOB about conditions in the house only when she was on the verge of being evicted. Her interests, therefore, not only were not those of the Plaintiff, but in fact were totally opposed to, and often retaliatory to, the Plaintiff's interests. Thus any notification to Tenant about the arrival of DOB's inspector was not, as a matter of fact and law, constructive notice to the Plaintiff about such arrival.

52.     The fact that DOB failed to give the Plaintiff timely notice of its inspection on March 7, 2023 and again on September 7, 2023 violated a basic procedural due process right of the Plaintiff. DOB's arrival at his home four days after its announced day and time for inspection was not, as is required under the due process requirements of the Fifth and Fourteenth Amendments, reasonably calculated to give the Plaintiff an effective opportunity to contest the evidence gathered by DOB

---

[2] Case No. 2022 LTB 008353.

when it <u>did</u> come to the Plaintiff's home. *Greene v. McElroy,* 360 U.S. 474, 496 (1959), quoted with approval in *Goldberg v. Kelly*, 397 U.S. 254, 270 (1970).

53.    This right to an effective opportunity to challenge DOB's evidence is especially relevant to the first inspection of the Plaintiff's home because the Plaintiff had a heat gun and was waiting for the inspector at the announced inspection time. The Plaintiff was going to take readings of heat content wherever the DOB inspector took them. In this way, the Plaintiff could check whether DOB's readings were accurate. The Plaintiff, however, was denied this opportunity because DOB came to his home at a different time and conducted an inspection of his home while he was in his basement office unaware of what was happening above him.

54.    Authority for a homeowner to gather evidence <u>while an inspection is underway</u> is very important. If such evidence is gathered by the homeowner at any time other than that of DOB's inspection, it likely will be of little or no evidentiary value in a subsequent enforcement proceeding. At any other time, the homeowner would have had the opportunity to alter the heat conditions in the home before taking his readings, and the homeowner would have no way of proving that he had not done this in an enforcement hearing. So the homeowner would have no way of defending against a DOB citation for inadequate heat. As in this instance with DOB and the Plaintiff, however, it is the homeowner who would be required to pay any fine that was ultimately assessed.

## COUNT ONE

**The Legal Authorities Under Which DOB Inspected the Plaintiff's Residence Violate the Fourth Amendment Facially in Failing to Provide Adequate Protections for Homeowners During Inspections of Rental Housing in the District.**

55.    Plaintiff re-alleges and incorporates paragraphs 1 through 54 as if set forth fully herein.

56.    DOB conducted its inspections of the Plaintiff's Residence under two legal authorities.

15

57.     The first of these authorities was D.C. Code § 42-3509.08 ("Inspection of Rental Housing"). This statute provides inspection authority to D.C. officials "for the purpose of determining whether any [rental housing] is in compliance with applicable housing rules or construction code rules…." For this purpose, D.C. officials "may enter upon and into any [rental housing] in the District, during all reasonable hours, to inspect the same."

58.     This statute also specifies that inspectors may not enter any portion of rental housing under a tenant's exclusive control without the tenant's permission, or a valid search warrant, or a reasonable basis to believe that entry is needed immediately to prevent imminent danger, or the tenant's permission.

59.     Guidance is also provided for a court's issuance of a search warrant, and a fine not exceeding $100 is authorized to be imposed on anyone interfering with an authorized inspection.

60.     D.C. Code § 42-3509.08, however, contains no provisions aimed at protecting a homeowner's rights during a residential inspection.

61.     The other authority under which DOB conducted its inspections of the Plaintiff's Residence was the PMC Regulations. Under this authority, DOB officials, who are now the "Code Officials" described in the PMC, may "enter the premises, or any part thereof, at reasonable times to inspect or to perform the duties imposed by the [PMC], subject to applicable law." PMC § 104.3. Before entering, a DOB inspector must present his credentials, although the PMC does not specify to whom. *Id.* Also, the DOB representative must observe the same restrictions on inspecting space under a tenant's exclusive control as are included under .D. C. Code § 42-3509.08, discussed above. *Id.*

62.     The PMC, however, also contains no provisions aimed at protecting homeowner's rights during a residential inspection.

16

63.     The guidance contained in each of these two D.C. legal authorities - D.C. Code § 42-3509.08 and the PMC Regulations - is therefore inadequate to meet requirements established by the U.S. Supreme Court under the Fourth Amendment to the U.S. Constituiton for protecting the Plaintiff and other homeowners during warrantless regulatory inspections of their homes.

64.     For this reason, D.C. Code § 42-3509.08 and the PMC Regulations are both facially unconstitutional and thus of no force and effect in the District.

65.     In turn, DOB's inspections of the Plaintiff's Residence under these authorities had no basis in law and thus were equally of no legal force and effect. [3]

## COUNT TWO

**B.      DOB's Inspections of the Plaintiff's Residence Also Violated The Plaintiff's Due Process Rights Under the Fifth and Fourteenth Amendments.**

66.     Plaintiff re-alleges and incorporates paragraphs 1 through 63 as if set forth fully herein.

67.     The fact that DOB failed to give the Plaintiff timely notice of its inspections on March 7 and September 7, 2023 violated a basic procedural due process tenet of the U.S. Constitution. DOB's arrival at his home four days after its announced day and time for inspection did not, as is required under the due process requirements of the Fifth and Fourteenth Amendments, give the Plaintiff an effective opportunity to contest the evidence taken by DOB on those occasions.

68.     As a result, DOB's two inspections of the Plaintiff's Residence were unconstitutional as conducted.

---

[3] In this Complaint, the Plaintiff is not arguing that a regulatory inspection cannot proceed at a residential property without the presence of the owner or that such an inspection must be done at the owner's convenience. The Plaintiff is merely arguing that the owner of a residential rental property in the District must be given _effective_ notice of the date and time when the property is to be inspected and an opportunity to be present when the inspection is conducted.

17

69.     Such inspections thus again had no basis in law and again were of no legal force and effect.

## RELIEF REQUESTED

Plaintiff respectfully requests that this Court now do the following:

A.      Declare D.C. Code § 42-3509.08 and the PMC Regulations to be facially unconstitutional under the Fourth Amendment to the U.S. Constitution and thus of no force and effect in the District;

B.      Enjoin the District from conducting further inspections of residential properties under these authorities as now written;

C.      Declare the inspections done by DOB of the Plaintiff's Residence to have been conducted in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution and thus are of no force and effect;

D.      Enjoin the District from conducting further inspections of residential properties in the District without giving the owners of those properties timely notice of when such properties are to be inspected and an opportunity to be present during the inspection.

E.      Order that the $4,716.00 collected by the District from the Plaintiff be refunded to the Plaintiff with appropriate interest. [4]

F.      Costs and attorneys fees pursuant to any applicable statute or authority.

G.      Any other relief that this Court in its discretion deems just and appropriate.

---

[4] If the request for refund of the Plaintiff's fine would constitute a claim against the D.C. government for which administrative procedures would first be required, the Plaintiff is willing to withdraw this requested relief for the time being so that the Court may first consider the merits of his Complaint. If the Court then rules for the Plaintiff on those merits, the Plaintiff would then file an administrative claim for refund based on the Court's ruling.

Respectfully submitted,

Edward W. Lyle, *pro se*
1805 – 45th Street N.W.
Washington D.C. 20007
Tel: (202) 333-4280
Fax: (202) 333-4282
Email: *ewlyle@west1805.com*

November 15, 2023

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

_Edward W. Lyle_
_____
                            Plaintiff

vs.                                                                   Case Number    2023-CAB-007041

_District of Columbia_
_____
                            Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

_Edward W. Lyle Pro Se_
_____
Name of Plaintiff's Attorney

_1805 - 45th St NW_
_____
Address
_Washington DC 20007_

_(202) 333-4280_
_____
Telephone

_Clerk of the Court_

By _____
                            Deputy Clerk

Date  **11/16/2023**

如需翻譯，请打电话 (202) 879-4828      Veuillez appeler au (202) 879-4828 pour une traduction      Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시요.      የትርጉም እርዳታ ከፈለጉ (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME_.

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                   Super. Ct. Civ. R. 4