UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDWARD W. LYLE,<br><br>    Plaintiff,<br><br>    v.<br><br>DISTRICT OF COLUMBIA,<br><br>    Defendant. | Civil Action No. 1:24-cv-00128-TNM |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................. 1

BACKGROUND ............................................................................................................................. 1

    I.     Regulatory Framework ............................................................................................. 1

    II.    The Inspections ........................................................................................................ 3

          A.     March 7, 2023 Inspection ............................................................................. 3

          B.     September 7, 2023 Inspection ...................................................................... 5

    III.   Plaintiff's Complaint and Procedural History .......................................................... 5

LEGAL STANDARD ..................................................................................................................... 6

ARGUMENT .................................................................................................................................. 7

    I.     Plaintiff Fails To Allege a Violation of His Fourth Amendment Right Against
          Unlawful Search. .................................................................................................... 7

    II.    Plaintiff Fails To Allege a Violation of His Fifth and Fourteenth Amendment Due
          Process Rights. ...................................................................................................... 10

    III.   Plaintiff Fails To Allege Any Harm Caused by a District of Columbia Policy or
          Custom. ................................................................................................................. 13

CONCLUSION ............................................................................................................................. 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2910 Georgia Ave. LLC v. District of Columbia*,
  234 F. Supp. 3d 281 (D.D.C. 2017) .................................................................................. 10, 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................. 6

*Atherton v. District of Columbia Office of Mayor*,
  567 F.3d 672 (D.C. Cir. 2009) ...................................................................................... 6, 10, 11

*Baker v. District of Columbia*,
  326 F.3d 1302 (D.C. Cir. 2003) .............................................................................................. 13

*Bd. of Regents v. Roth*,
  408 U.S. 564 (1972) ................................................................................................................ 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................................. 6

*Bell v. Wolfish*,
  441 U.S. 520 (1979) .................................................................................................................. 8

*Camara v. Mun. Ct. of S.F.*,
  387 U.S. 523 (1967) ............................................................................................................. 8, 9

*EEOC v. St. Francis Xavier Parochial Sch.*,
  117 F.3d 621 (D.C. Cir. 1997) .................................................................................................. 6

*Egudu v. District of Columbia*,
  72 F. Supp. 3d 34 (D.D.C. 2014) ............................................................................................ 14

*Elkins v. District of Columbia*,
  690 F.3d 554 (D.C. Cir. 2012) ................................................................................................ 10

*Fernandez v. California*,
  571 U.S. 292 (2014) .................................................................................................................. 8

*Garcia v. Fed. Nat'l Mortg. Ass'n*,
  782 F.3d 736 (6th Cir. 2015) ................................................................................................... 12

*Henthorn v. Dep't of Navy*,
  29 F.3d 682 (D.C. Cir. 1994) .................................................................................................... 6

*Huffman v. Lindgren*,
  81 F.4th 1016 (9th Cir. 2023) .................................................................................................... 7

*Hunter v. District of Columbia*,
  824 F. Supp. 2d 125 (D.D.C. 2011) ........................................................................................ 14

*Hurd v. District of Columbia*,
  997 F.3d 332 (D.C. Cir. 2021) .......................................................................................... 13, 15

*Klayman v. Zuckerberg*,
  910 F. Supp. 2d 314 (D.D.C. 2014) .......................................................................................... 7

*Laughlin v. Holder*,
  923 F. Supp. 2d 204 (D.D.C. 2013) .......................................................................................... 6

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) ................................................................................................................ 13

*Monell v. Dep't of Soc. Servs. of N.Y.C.*,
  436 U.S. 658 (1978) .................................................................................................... 13, 14, 15

*Page v. Mancuso*,
    999 F. Supp. 2d 269 (D.D.C. 2013) .......................................................................... 14
*Parker v. District of Columbia*,
    850 F.2d 708 (D.C. Cir. 1988) ................................................................................. 14
*Puckett v. Lexington-Fayette Urban Cnty. Gov't*,
    833 F.3d 590 (6th Cir. 2016) ................................................................................... 12
*Robinson v. Howard Univ., Inc.*,
    335 F. Supp. 3d 13 (D.D.C. 2018) .............................................................................. 7
*S.D. v. Neville*,
    459 U.S. 553 (1983) ................................................................................................. 9
*See v. Seattle*,
    387 U.S. 541 (1967) ................................................................................................. 9
*Tabb v. District of Columbia*,
    605 F. Supp. 89 (D.D.C. 2009) ............................................................................... 14

## Statutes

42 U.S.C. § 1983 ........................................................................................................ 13, 14
D.C. Code § 1-204.31(a) ................................................................................................. 12
D.C. Code § 2-1831.03(b) (2023) .................................................................................... 12
D.C. Code § 42-3509.08(a) (2019) ................................................................................ 2, 9
D.C. Code § 42-3509.08(d)(3) .......................................................................................... 3
U.S. Const. amend. IV ...................................................................................................... 8

## Regulations

D.C. Mun. Reg. tit. 12G, § 104.3.4 ................................................................................... 3
D.C. Mun. Reg. tit. 14, § 501.4 ......................................................................................... 3
D.C. Mun. Regs. tit. 12G, § 104.3 ..................................................................................... 9
D.C. Mun. Regs. tit. 12G, § 104.3 (2017) ......................................................................... 2
D.C. Mun. Regs. tit. 12G, § 104.3.4 (2017) ...................................................................... 2
D.C. Mun. Regs. tit. 14, § 200.1 ........................................................................................ 1
D.C. Mun. Regs. tit. 14, § 202.1 (2012) ....................................................................... 9, 11
D.C. Mun. Regs. tit. 28, § 2821.6 (2023) ........................................................................ 12
D.C. Mun. Regs. tit. 28, § 2828 ....................................................................................... 12

## INTRODUCTION

This is a case about inspections of a residential rental property conducted by the D.C. Department of Buildings (DOB) at the request and consent of the occupying tenant. The landlord—Plaintiff Edward Lyle—alleges that such inspections are facial violations of the Fourth, Fifth, and Fourteenth Amendments when conducted without the landlord's presence and seeks an order invalidating the long-standing D.C. regulations permitting such inspections. As Plaintiff freely admits, he has consented to such searches as a condition of licensing a housing business in the District of Columbia, had notice of each inspection in advance of the inspector's arrival, and was present in the residential rental property—although he did not accompany the inspector—during each inspection. As discussed below, the D.C. regulations in question are consistent with the requirements of the Fourth, Fifth, and Fourteenth amendments—and consistent with caselaw interpreting these amendments in the context of administrative searches. Therefore, Plaintiff's Complaint fails as a matter of law and should be dismissed with prejudice.

## BACKGROUND

**I.     Regulatory Framework**

The D.C. Municipal Regulations provide a licensing framework to govern basic business licenses for "housing businesses." D.C. Mun. Regs. tit. 14, § 200.1–2 (2012). "No person shall operate a housing business in any premises in the District of Columbia without first receiving a basic business license." § 200.3.

"As a condition of licensure, a licensee shall allow [DOB], and any other District government agency responsible for enforcement of the housing and business regulations, to inspect its housing business premises." § 202.1. Licensees are further required to "maintain the premises in a manner that complies with the applicable provisions of the D.C. Official Code, [and] the District Property Maintenance Code (subtitle G of 12 DCMR)." *Id.* § 202.2(b).

Subtitle G of Title 12 of the D.C. Municipal Regulations provide substantially the same requirement:  Licensees "must agree to allow access to [DOB] for any inspection required under the Construction Codes," which is also a "condition of receiving a housing business license under . . . Chapter 2 of Title 14 DCMR."  D.C. Mun. Regs. tit. 12G, § 104.3.4 (2017) (italics omitted).

The D.C. Code provides that District officials, including officials from DOB, "may enter upon and into any housing accommodation in the District, during all reasonable hours, to inspect the same."  D.C. Code § 42-3509.08(a) (2019).  Subtitle G of Title 12 of the D.C. Municipal Regulations further authorize DOB inspectors (referred to as "code officials") to:

> [E]nter the premises, or any part thereof, at reasonable times to inspect or to perform the duties imposed by the Property Maintenance Code . . . .  This authority includes, but is not limited to situations where the code official has reasonable cause to believe that a condition exists in or upon a premises that is contrary to or in violation of the Property Maintenance Code.

D.C. Mun. Regs. tit. 12G, § 104.3 (2017) (italics omitted).  These same regulations allow an inspector to enter an "occupied residential portion of any premises under the exclusive control of the tenant" upon consent of the tenant (or other individual of suitable age and discretion who resides there), unless the inspector has an administrative search warrant or reasonably believes there is "imminent danger to the public health, safety, or welfare . . . requiring immediate entry into that portion of the premises."  § 104.3.1 (italics omitted); *see also* D.C. Code § 42-3509.08(a) (providing substantially similar authority for DOB and D.C. officials to enter a housing accommodation with consent of the tenant, a valid administrative search warrant, or "reasonable basis to believe that exigent circumstances require immediate entry into that portion of the premises"). Further, "[DOB,] both prior to the issuance of a housing business license and during the

2

license period, is authorized to enter and inspect at all reasonable hours the premises occupied or to be occupied by a housing business." D.C. Mun. Reg. tit. 12G, § 104.3.4 (italics omitted).

DOB may seek an administrative search warrant or other "remedies provided by law to secure entry" to the premises "if entry is refused," presumably, by any resident of the residential rental property. *Id.* § 104.3.3; *see also* D.C. Code § 42-3509.08(d)(3) (providing grounds for issuance of an administrative search warrant if, among other requirements, "the owner, tenant, or other individual in charge of the property has denied access to the property"). But neither the D.C. Code nor D.C. Municipal Regulations require DOB to seek an administrative search warrant unless and until entry is refused. No particular notice is required by District law for a DOB inspection.

## II.   The Inspections

Plaintiff operates a housing business, including a residential rental property at 1805 – 45th Street N.W., Washington D.C. 20007, presumably under a valid license from DOB. Compl. ¶¶ 1, 38–39. DOB received complaints from Plaintiff's tenant on at least two occasions and subsequently conducted two inspections of Plaintiff's residential rental property. Compl. ¶¶ 6, 17. Plaintiff sought to evict the tenant residing in the rental property and had an eviction action pending in D.C. Superior Court during both inspections. Compl. ¶ 51.

### A.   March 7, 2023 Inspection

On March 3, 2023, DOB notified Plaintiff that his tenant had submitted a complaint, alleging, among other things, Plaintiff had violated the D.C. Housing Code Standards in failing to meet minimum heat requirements. Compl. ¶ 6; *see* D.C. Mun. Reg. tit. 14, § 501.4 (requiring the "licensee to supply sufficient heat to maintain" minimum temperatures of 65–68 degrees, depending on the time of day). DOB informed Plaintiff that a DOB representative would be

3

coming to inspect his residential rental property during a two-hour window that day. Compl. ¶ 6. The DOB inspector communicated with the tenant about his arrival time, rescheduled it, and arrived to conduct the inspection on March 7, 2023. Compl. ¶¶ 9–12. The DOB inspector did not communicate with Plaintiff about rescheduling the inspection. Compl. ¶ 11.

The tenant consented to the inspector accessing the residential rental unit and accompanied the inspector "during the entirety of his inspection" of the first floor and portions of the second floor. Compl. ¶¶ 12–13, 48. Plaintiff does not allege that the inspector entered any portion of the residential rental property that was not under the control of the tenant. Plaintiff was present in the residential rental property during the inspection—working in an office in the basement. Compl. ¶ 13. Plaintiff does not allege that he at any time refused access to the DOB inspector or that he would have refused the DOB inspector access to the residential rental property. *See, e.g.*, Compl. ¶ 8. In fact, Plaintiff "waited for DOB's inspector" on March 3, 2023, believing the inspector would arrive on that day, having prepared a heat gun to take supplemental temperature readings during the anticipated inspection. *Id.*

During the inspection, the DOB inspector found a point within the rental unit that was below the minimum temperature required by the District and issued a Notice of Infraction for that alleged violation. Compl. ¶¶ 14–15. Plaintiff indicates that he initially provided the tenant a space heater, but the tenant allegedly moved the heater into a bedroom, and it had subsequently "burned . . . out" without being replaced. Compl. ¶ 15. At a later point, following a hearing with the D.C. Office of Administrative Hearings—before an administrative law judge—Plaintiff was fined $4,716.00 for violating minimum heat requirements. Compl. ¶ 16.

### B. September 7, 2023 Inspection

On August 22, 2023, Plaintiff was again notified by DOB that his tenant had submitted a second complaint for "other conditions," and that a second inspection would be conducted the next day, again providing a specific two-hour window of time. Compl. ¶¶ 17–18. DOB rescheduled the inspection at least once. Compl. ¶¶ 19–22. During these rescheduling efforts, Plaintiff inquired about additional details online from a "DOB chat person," who did not have additional details, and subsequently, Plaintiff received an email from DOB informing him that the inspection had been moved to September 6, 2023. Compl. ¶¶ 19–20.

The DOB inspector conducted a second inspection on September 7, 2023, and as with the prior inspection, the DOB inspector was admitted to the residential rental property while Plaintiff was working in a basement office. Compl. ¶ 22. DOB did not notify Plaintiff about the delay from September 6, 2023, to September 7, 2023. Compl. ¶ 21.

### III. Plaintiff's Complaint and Procedural History

On November 16, 2023, Plaintiff filed a pro se complaint in the Superior Court of the District of Columbia, naming the District as defendant, and seeking to invalidate long-standing District regulations governing DOB rental housing inspections as unconstitutional. *See Lyle v. District of Columbia*, D.C. Super. Ct. Case No. 2023-CAB-007041. On January 12, 2024, the District filed a notice of removal of the case to this Court. *See* Notice of Removal [1]; *see also* Civil Cover Sheet [2] (correcting the Civil Cover sheet attached to the original Notice of Removal); Notice to Counsel/Party [4] (noting that the case was removed).

Plaintiff's Complaint contains two counts. First, Plaintiff asserts that DOB authority to conduct an inspection of residential rental property under District law violates the Fourth Amendment for failing to protect homeowner interests during an inspection. Compl. ¶¶ 55–65. Second, Plaintiff alleges that delays in the inspector's arrival following notice of a pending

5

inspection violated Plaintiff's procedural due process rights under the Fifth and Fourteenth Amendments. Compl. ¶¶ 66–69. Plaintiff seeks an order enjoining the District from conducting future inspections of residential rental properties under current District law, and separately, from doing so without "timely notice of when such properties are to be inspected and an opportunity to be present during the inspection." Compl. at *18. Finally, Plaintiff seeks an award of damages in the amount of $4,716.00 plus interest, costs, and attorney's fees. *Id.*

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). In evaluating a motion under Rule 12(b)(6), the Court "may consider . . . the facts alleged in the complaint, any documents either attached to or incorporated in the complaint, and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *see also Laughlin v. Holder*, 923 F. Supp. 2d 204, 209 (D.D.C. 2013).

Although "[p]ro se complaints are held to less stringent standards than formal pleadings drafted by lawyers," they still "must present a claim upon which relief can be granted by the court." *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994) (italics and quotation marks omitted); *accord Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672, 682

6

(D.C. Cir. 2009).  And where, as here, the pro se litigant is an attorney, he is not typically afforded the "liberal pleading standard" of other pro se litigants.  *Huffman v. Lindgren*, 81 F.4th 1016, 1020–21 (9th Cir. 2023) (joining the Second, Sixth, Seventh, and Tenth Circuits in adopting the position that "a pro se lawyer is entitled to no special consideration").[1]  While the D.C. Circuit has not "conclusively resolved the issue," courts in this District have held that "lawyers are not entitled to any special protection when they appear pro se."  *Robinson v. Howard Univ., Inc.*, 335 F. Supp. 3d 13, 22 (D.D.C. 2018) (McFadden, J.); *see also Klayman v. Zuckerberg*, 910 F. Supp. 2d 314, 317 (D.D.C. 2014) (denying special consideration to a pro se plaintiff), *aff'd* 753 F.3d 1453 (D.C. Cir. 2014) (declining to resolve the question of whether a pro se attorney is afforded special consideration when case can be dismissed without reaching the question).

## ARGUMENT

**I.    Plaintiff Fails To Allege a Violation of His Fourth Amendment Right Against Unlawful Search.**

Plaintiff argues that his Fourth Amendment rights against unreasonable searches and seizures were violated by DOB inspections of his housing business at the invitation of his tenant, either because they failed to seek an administrative search warrant, or because Plaintiff did not accompany the inspector during the inspection.  Not so.  The Supreme Court has held that precisely such an administrative search is permitted under the Fourth Amendment.  And Plaintiff's claim should be dismissed accordingly.

---

[1]    The D.C. Bar's website shows a record for an attorney in good standing named Edward W. Lyle with the same email address as Plaintiff.  *See* D.C. Bar, *Searchable Member Directory*, https://my.dcbar.org/directorymemberships?id=0014z00001kaAGVAA2 (last accessed Jan. 30, 2024).

The Fourth Amendment prohibits "unreasonable searches and seizures[.]" U.S. Const. amend. IV. In determining whether a search is "unreasonable" under the Fourth Amendment, courts have used a "balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). To that end, "[c]ourts must consider the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it was conducted." *Id.*

It is well-established that consent makes a search reasonable. *Fernandez v. California*, 571 U.S. 292, 306 (2014) ("A warrantless consent search is reasonable and thus consistent with the Fourth Amendment irrespective of the availability of a warrant."). And, specifically, in *Camara v. Mun. Ct. of S.F.*, 387 U.S. 523 (1967), the Supreme Court held that administrative searches without a warrant are reasonable *unless* the resident or tenant affirmatively refuses entry to a housing inspector. 387 U.S. at 540 (holding that appellant–tenant "had a constitutional right to insist that . . . inspectors obtain a warrant to search and that appellant may not constitutionally be convicted for refusing to consent to [an] inspection"). Further, the Court reasoned that since "most citizens allow inspections of their property without a warrant[,] . . . as a practical matter . . . warrants should normally be sought *only after entry is refused* unless there has been a citizen complaint or there is other satisfactory reason for securing immediate entry." *Id.* at 539–40 (emphasis added). And, as inspections for code enforcement are "neither personal in nature nor aimed at the discovery of evidence of crime, they involve a relatively limited invasion of the urban citizen's privacy." *Id.* at 537.

Building on the reasoning in *Camara*, the Supreme Court has continued to endorse a theory of implied consent to administrative searches in regulated activities—even when there were administrative penalties available if individuals refused to explicitly consent to the search.

8

*See v. Seattle*, 387 U.S. 541, 542, 545–46 (1967) (extending *Camara* to commercial structures, finding an administrative search of a commercial warehouse unconstitutional when the owner refused entry prior to the search); *see also S.D. v. Neville*, 459 U.S. 553, 559–60 (1983) (state statute that implied consent to blood alcohol tests from drivers upheld as constitutional, even though the statute was enforced by an administrative penalty (removal of license for a year) if drivers refused to consent to the blood alcohol test).

The District's statutory and regulatory scheme for conducting DOB inspections is consistent with the reasonableness standard articulated by the Court in *Camara*. Housing business licensees agree to consent to inspections as a condition of licensing, D.C. Mun. Regs. tit. 14, § 202.1 (2012), and inspectors are authorized to conduct inspections "during all reasonable hours." D.C. Code § 42-3509.08(a). A tenant or resident may refuse access to an inspector, which triggers DOB's warrant provision, allowing DOB to seek an administrative search warrant to enter the premises (unless there are exigent circumstances). D.C. Mun. Regs. tit. 12G, § 104.3; D.C. Code § 42.3509.08(a). This is precisely the regulatory scheme permitted by *Camara*: Housing authorities may inspect for code violations *unless and until* entry is refused, at which point, authorities may seek an administrative search warrant, unless there exist exigent circumstances. *Camara*, 387 U.S. at 539–40. Accordingly, the District's legislative and administrative authority for conducting DOB inspections is consistent with the requirements and protections of the Fourth Amendment.

Here, Plaintiff plainly admits that, as a housing business licensee, he "has the expectation that he will be inspected." Compl. ¶¶ 38–39 ("fully expecting to be inspected"); *see also* D.C. Mun. Regs. tit. 14, § 202.1 (2012) (consent to searches is a condition of licensure as a housing business). Plaintiff has not alleged that he withdrew this implied consent at any time—he has

not alleged, for example, that he informed DOB that they could not search his residential rental property when they notified him of a pending inspection or withdrew consent in any subsequent communications with DOB. Indeed, Plaintiff took no actions prior to the inspections of his residential rental property that could be construed as a withdrawal of implied consent. His tenant, on the other hand, explicitly consented to both DOB inspections. Compl. ¶¶ 6–13, 17–18. As Plaintiff consented to DOB inspections as a condition of operating a housing business in the District, and his tenant consented in advance of both inspections at issue in the Complaint, both were consistent with the Fourth Amendment. Count one thus fails on the merits and should be dismissed with prejudice.

## II. Plaintiff Fails To Allege a Violation of His Fifth and Fourteenth Amendment Due Process Rights.

Plaintiff alleges that DOB "violated a basic procedural due process tenet of the U.S. Constitution" when DOB inspectors "failed to give the Plaintiff timely notice of [the] inspections." Compl. ¶ 67. But Plaintiff is wrong on this point too. "The three basic elements of a procedural due process claim are (1) a deprivation, (2) of life, liberty, or property, (3) without due process of law." *2910 Georgia Ave. LLC v. District of Columbia*, 234 F. Supp. 3d 281, 315 (D.D.C. 2017); *see Atherton*, 567 F.3d at 689 (holding that a procedural due process claim requires a plaintiff to show that an official deprived him of "a liberty or property interest without providing appropriate procedural protections"). And, crucially, "a complaint must suggest what sort of process is due." *Elkins v. District of Columbia*, 690 F.3d 554, 561 (D.C. Cir. 2012) (quotation marks omitted). Here, Plaintiff has failed to allege facts sufficient to satisfy these requirements, and the Court should dismiss this claim accordingly.

Here, Plaintiff alleges that "DOB's arrival at his home four days after [the] announced day and time for inspection did not . . . give [him] an effective opportunity to contest the

evidence taken by DOB on those occasions." Compl. ¶ 67.  In other words, Plaintiff argues that he was not afforded *accurate* notice, which, in turn, deprived him of an effective opportunity to contest the inspector's findings.  This argument fails for several reasons.

First, Plaintiff has not alleged that any right to a valid "life, liberty, or property" interest is at issue here.  *2910 Georgia Ave. LLC*, 234 F. Supp. 3d at 315.  Plaintiff confusingly asserts a right to "timely notice of . . . inspections," but his Fifth Amendment claim should be dismissed because there is no basis for such a right.  Compl. ¶ 67; *see Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).  Interests for due process purposes arise from two sources—the Constitution and state law; and, here, neither is alleged to guarantee any particular type of notice of an inspection of a rental property.  *Atherton*, 567 F.3d at 689; *see* Argument, Section I, above (explaining why Plaintiff has not been deprived of his Fourth Amendment rights); Background, Section I (explaining that District law provides no right to any particular type of notice of DOB inspections).

Second, even if Plaintiff had some right to notice of the inspections, he was not *deprived* of that notice.  DOB *did in fact* notify Plaintiff of both pending investigations of his residential rental property—even if the DOB inspector rescheduled on both occasions with the tenant.  Compl. ¶¶ 6–12, 17–22.  And even if DOB had provided no notice of the specific inspection(s), he would have been on notice by virtue of his licensure, which requires that landlords consent to DOB inspections of their licensed properties.  D.C. Mun. Regs. tit. 14, § 202.1.  Whether the notice of the inspection was *accurate* is irrelevant, because, as Plaintiff concedes, the DOB inspector communicated with the tenant as to the timing of the inspections.  *E.g.*, Compl. ¶¶ 9–12.  As discussed above, the tenant invited DOB to inspect the residential rental property and consented to both inspections.  Compl. ¶¶ 12, 17, 22.

11

Third, even generously construing Plaintiff's due process challenge as related to the recognized interest of which he was deprived—the $4,716.00 he was fined for violations related to the first inspection—his claim would fail on the merits because he acknowledges he had adequate process available to him.  For starters, he concedes that he received the Notice of Infraction issued by DOB—the basis for the monetary fine.  Compl. ¶ 14.  And he acknowledges that he had an adequate post-deprivation remedy to contest the fine via an Office of Administrative Hearings (OAH) hearing.  Compl. ¶ 16.  Indeed, Plaintiff availed himself of that process, and he does not contend that it failed him in any constitutionally relevant way.

Nor could Plaintiff plausibly contend that the processes were infirm.  OAH has jurisdiction to adjudicate cases under the jurisdiction of the Department of Buildings.  D.C. Code § 2-1831.03(b) (2023).  All parties have a right to present evidence during OAH hearings.  *See* D.C. Mun. Regs. tit. 28, § 2821.6 (2023) ("At a hearing, all parties may present evidence.  'Evidence' includes testimony by the parties and by any witnesses that a party may present.  Evidence also includes papers, photographs, or any other items that a party believes may help the Administrative Law Judge decide the case.").  Upon a final order from OAH, an individual may ask OAH to allow a new hearing, change the order, or appeal to the D.C. Court of Appeals.  *See* D.C. Code § 1-204.31(a); D.C. Mun. Regs. tit. 28, § 2828–30 (2023).  Again, Plaintiff does not allege any facts related to the sufficiency of his OAH hearing, the result, or opportunity for appeal; his only grievance is that he is unhappy with the outcome.  *See* Compl. ¶ 16.  But that does not implicate due process principles.  *See Puckett v. Lexington-Fayette Urban Cnty. Gov't*, 833 F.3d 590, 606 (6th Cir. 2016) ("At its core, procedural due process requires 'notice and an opportunity to be heard at a meaningful time and in a meaningful manner.'" (quoting *Garcia v.*

*Fed. Nat'l Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015))); *Mathews v. Eldridge*, 424 U.S. 319, 333, 348–49 (1976) (An evidentiary hearing satisfies procedural due process.).

In short, Plaintiff had ample opportunity to develop and present his own evidence or "contest the evidence taken by DOB" during the inspections.  Compl. ¶ 8.  And he has thus failed to state any claim under the Due Process clause.

### III.     Plaintiff Fails To Allege Any Harm Caused by a District of Columbia Policy or Custom.

Even assuming Plaintiff has adequately alleged a violation of one or more constitutional rights (which he has not), his claims against the District should still be dismissed because he has failed to allege that any violation was caused by a municipal policy or custom of the District. "[U]nder 42 U.S.C. § 1983, municipalities can be held liable for constitutional violations committed by their employees only if a plaintiff shows that the municipality is the 'moving force' behind the constitutional violation, meaning that an 'official municipal policy of some nature caused a constitutional tort.'"  *Hurd v. District of Columbia*, 997 F.3d 332, 337 (D.C. Cir. 2021) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978)).  The D.C. Circuit has identified four ways such an official policy can be shown: (1) the municipality adopts a policy that violates the Constitution; (2) a "policy maker" within the government takes an unconstitutional action; (3) "the employees' unconstitutional actions are so consistent that they have become a custom of the municipality of which the supervising policymaker must have been aware;" or (4) "deliberate indifference" to the risk of constitutional violations.  *Id.* at 337 (quoting *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)).

At base, Plaintiff's Complaint boils down to his contention that the District improperly provided ineffective notice of the DOB inspections.  Compl. ¶¶ 65, 67, n.3.  But he has failed to allege that the District provided inaccurate notices due to a *District policy*.  He does not allege

13

that a "policy maker" within the government provided him with the incorrect two-hour window for the inspections date and time. Instead, he merely alleges that a District employee made a mistake when providing notice of the inspections. Compl. ¶¶ 6–12, 17–22. As a matter of common sense, that cannot be right—if any statement by an agency employee could be so easily conflated with municipal policy, the policy and custom requirement would be meaningless, and cities would effectively be held vicariously liable for any mistaken statement or decision by any employee. That is not the law. *See Monell*, 436 U.S. at 692 (holding Section 1983 does not impose vicarious liability).

Moreover, Plaintiff has failed to show that he received ineffective notice of the inspection due to a particular District custom. *Cf.* Compl. ¶¶ 65, 67. To state a claim for municipal liability based on a custom, a plaintiff must allege "concentrated, fully packed, precisely delineated scenarios" to support his allegations that such a policy or custom exists, *Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) (quoting *Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988)), and that the custom is "pervasive." *Tabb v. District of Columbia*, 605 F. Supp. 89, 96 (D.D.C. 2009). In other words, a plaintiff must show past events involving government actions that are identical to the alleged wrongdoing underlying the plaintiff's claim. *Egudu v. District of Columbia*, 72 F. Supp. 3d 34, 41 (D.D.C. 2014) (holding report "analyz[ing] data related to disorderly conduct arrests [but] tailored toward exposing racial disparities" could not show policy or custom of violat[ing] an individual's free speech right or the right to be free from an unlawful seizure"); *Hunter v. District of Columbia*, 824 F. Supp. 2d 125, 133–34 (D.D.C. 2011) (holding report could not evidence municipal custom where "plaintiff was not arrested for the offense examined in the report").

14

Although Plaintiff "argu[es] that the owner of a residential rental property in the District must be given effective notice of the date and time when the property is to be inspected and [therefore] an opportunity to be present," Compl. at *17, n.3, he also plainly alleges that DOB *did* notify Plaintiff of both inspections—down to a two-hour window on a specific date each time. *Id.* ¶¶ 7, 18. Plaintiff has not alleged any additional examples of DOB not providing "effective notice." Rather, Plaintiff has plausibly alleged that DOB *has a custom* of providing notice of a *specific* date and time to the landlord of a housing business. *Id.* DOB communicated with Plaintiff's tenant extensively to reschedule both inspections. Compl. ¶¶ 12, 20–22. If anything, Plaintiff alleges that the District provides more notice than is constitutionally required.

Finally, and for related reasons, nothing in the Complaint suggests a theory of "deliberate indifference" to the risk of constitutional violations. *Cf. Hurd*, 997 F.3d at 337.

Because he has not alleged that his Fourth, Fifth, or Fourteenth amendment rights were violated by the existence of a District policy or custom, Plaintiff has failed to state a claim against the District. *See Monell*, 436 U.S. at 691.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint with prejudice.

Date: February 2, 2024.                                   Respectfully Submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

STEPHANIE E. LITOS
Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Equity Section, Civil Litigation Division

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Pamela A. Disney*
PAMELA A. DISNEY [1601225]
THOMPSON J. HANGEN*
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone: (202) 807-0371
Email: pamela.disney@dc.gov

*Counsel for Defendant*

*Counsel is a member in good standing of the Virginia State Bar, authorized by the Office of the Attorney General for the District of Columbia to provide legal services pursuant to Local Civil Rule 83.2(g).  Counsel certifies that he is personally familiar with the Local Rules of this Court as well as the other materials set forth in Local Civil Rules 83.8(b) and 83.9(a).

16