UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**EDWARD W. LYLE**,

        Plaintiff,

        v.

**DISTRICT OF COLUMBIA**,

        Defendant.

Case No. 1:24-cv-00128 (TNM)

## MEMORANDUM OPINION

Does the government violate a landlord's Fourth Amendment and due process rights when it conducts a warrantless administrative search of his property? Plaintiff Edward Lyle insists that it does. But warrantless searches are permitted so long as an occupant with apparent authority grants consent—as happened here. So Lyle's section 1983 lawsuit against the District of Columbia alleging violations of his constitutional rights must be dismissed.

**I.**

Lyle owns a home in Washington, D.C., which he shares with a tenant. Compl. ¶ 6. In March 2023, the D.C. Department of Buildings (DOB) emailed Lyle notice that it would be inspecting his residence that day between 2:00 and 4:00 p.m. *Id.* ¶¶ 6–7. The purpose of the inspection was to follow up on the tenant's complaint of inadequate heat. *Id.* Lyle waited for the inspector at the residence at the stated time. *Id.* ¶ 8. But no inspector arrived, and no one contacted him to reschedule. *Id.* ¶ 9.

Four days later, a DOB inspector did come to the residence. *Id.* ¶ 11. But Lyle was never informed. *Id.* He later discovered that DOB had coordinated a new inspection time with the tenant, who did not relay it to Lyle. *Id.* ¶ 12. The tenant "let [the inspector] in[to] [the

residence] and was with him during the entirety of his inspection." *Id*. Though Lyle was home at the time, he was in the basement and was unaware the inspection was taking place. *Id*. ¶ 13.

While inspecting the dining room, the inspector noted that the area near the rear bay window was below the minimum required temperature. *Id*. ¶ 14. Lyle alleges that he kept an electric space heater near the window to ensure the temperature met the requirement but that the tenant had moved the heater—without notifying him—into another room that she had "unilaterally appropriated as a bedroom." *Id*. ¶ 15. Still, the inspector issued a notice of infraction. *Id*. ¶ 14. And an administrative law judge fined Lyle $4,716. *Id*. ¶ 16.

In August 2023, DOB again notified Lyle of a forthcoming inspection in response to a tenant complaint. *Id*. ¶ 17. The notice stated that the DOB inspector would arrive between 7:00 a.m. and 9:00 a.m. the next day. *Id*. ¶ 18. Lyle awaited the inspector at the residence during that window, but as before, no inspector arrived. *Id*. ¶¶ 18–19. Nor did anyone from DOB contact him to reschedule. *Id*. ¶ 19. Lyle then contacted DOB through its website but could not obtain any information about rescheduling the inspection. *Id*.

The next day, Lyle received an email from DOB informing him that the inspection had been moved to September 6, 2023. *Id*. ¶ 20. Once again, Lyle waited for the inspector at the residence on that day, but no one arrived or contacted him to reschedule. *Id*. ¶ 21. The next day, however, a DOB inspector conducted an inspection at the residence. *Id*. ¶ 22. As before, Lyle was in the basement, unaware the inspection was taking place. *Id*.

\*   \*   \*

The D.C. Code and the D.C. Municipal Regulations establish the circumstances under which District officials may inspect residential housing units. Under the D.C. Code, DOB is permitted to "enter upon and into any [rental] housing accommodation in the District, during all

reasonable hours" "for the purpose of determining whether any housing accommodation is in compliance with applicable housing rules or construction code rules."  D.C. Code § 42-3509.08(a).  But if a tenant "does not give permission to inspect that portion of the premises under the tenant's exclusive control, [DOB inspectors] shall not enter that portion of the premises"—unless they have a valid administrative search warrant or reasonably believe exigent circumstances require immediate entry.  *Id.*

The D.C. Municipal Regulations provide additional rules applicable "to residential housing businesses."  D.C. Mun. Regs. tit. 14 § 200.1–2.  To operate a residential housing business, a license is required.  *Id.* § 200.3.  And as a condition of such license, "a licensee shall allow [DOB] . . . to inspect its housing business premises."  *Id.* § 202.1.  Like the D.C. Code, the Municipal Regulations permit inspectors "to enter the premises, or any part thereof, at reasonable times to inspect or to perform the duties imposed by the [District's regulations]."  *Id*. tit. 12G § 104.3.  When inspecting "an occupied residential portion of any premises under the exclusive control of a tenant," inspectors are prohibited from "enter[ing] that portion of the premises without first having obtained permission from the tenant."  *Id*. § 104.3.1.  If the tenant refuses entry, the inspector may apply to the Superior Court for the District of Columbia for an administrative search warrant.  *Id*. § 104.3.3.

In November 2023, Lyle sued the District in the Superior Court, alleging that the District violated his Fourth, Fifth, and Fourteenth Amendment rights by conducting warrantless unconsented searches of his residence without providing effective notice.  Compl. ¶¶ 55–69. Lyle seeks a declaration that the District's regulations permitting rental housing inspections are unconstitutional, an injunction against DOB's further inspection of residential properties until their policies are amended, and a refund of the $4,716 fine.  *Id*. at 2.  The District removed the

3

case here in January 2024.  Notice of Removal, ECF No. 1.  Soon after, it moved to dismiss the Complaint, Mot. to Dismiss (MTD), ECF No. 8.  That motion is now ripe.

## II.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.

The Court generally construes pro se pleadings liberally.  *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999).  But Lyle, though pro se, is an attorney and an active member of the D.C. Bar.  He is therefore "not automatically subject to the very liberal standards afforded to a non-attorney pro se plaintiff because an attorney is presumed to have a knowledge of the legal system and needs less protections from the court."  *Robinson v. Howard Univ., Inc.*, 335 F. Supp. 3d 13, 22 (D.D.C. 2018) (cleaned up), *aff'd sub. nom., Robinson v. Wutoh*, 788 F. App'x 738 (D.C. Cir. 2019); *Huffman v. Lindgren,* 81 F.4th 1016, 1020–21 (9th Cir. 2023) (joining the "chorus" of appellate courts declining to extend liberal pleading standard to pro se attorneys).

## III.

Lyle argues that D.C. Code provisions regarding rental housing inspections are facially invalid under the Fourth Amendment because they do not include adequate protections for homeowners.  He also contends that the DOB's inspections violated his Fifth and Fourteenth Amendment due process rights because he was not given proper notice.  The Court addresses each claim in turn.

A.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It also provides that "no Warrants shall issue, but upon probable cause." *Id*. So the Supreme Court has held that "searches conducted outside the judicial process, without prior approval by a judge or a magistrate judge, are *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015) (cleaned up). The general prohibition on warrantless searches applies not only in the criminal context but also to "administrative searches," such as inspections of rental housing. *See Camara v. Mun. Ct. of City & Cnty. of San Francisco*, 387 U.S. 523, 534 (1967).

Lyle's marquee argument is that the District's warrantless administrative search violated his Fourth Amendment rights as the landlord of the rental property. But Lyle also resides at the property. And residents have distinct and more substantial Fourth Amendment interests than owners. As it happens, the consent of the tenant to an administrative search resolves the Fourth Amendment issue in either case, though for different reasons. So the Court will address Lyle's interests, both as a landlord and a resident.

Start with Lyle's Fourth Amendment rights as a landlord. Lyle argues that the District's Code and Municipal Regulations facially violate the Fourth Amendment because they permit District officials to conduct warrantless searches of residential properties without providing notice to the landlord or obtaining his consent. *See* Compl. at 1. "[F]acial challenges under the Fourth Amendment are not categorically barred or especially disfavored." *City of Los Angeles*, 576 U.S. at 415. Still, a facial challenge is "the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [law]

5

would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).  For Lyle to adequately plead this facial violation, he must show that landlords like himself have a "legitimate expectation of privacy" in the residential properties subject to inspection under District law. *Byrd v. United States*, 584 U.S. 395, 403 (2018).

"[T]he Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises, as well as to private homes." *New York v. Burger*, 482 U.S. 691, 699 (1987).  A business owner, "like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property." *See v. City of Seattle*, 387 U.S. 541, 543 (1967).  This protection applies not only to "criminal investigative searches" but also to "official inspection[s] [that are] intended to aid enforcement of laws prescribing minimum physical standards for commercial premises." *Id*.  So the Supreme Court has held that, other than in a few rare circumstances, government officials must obtain a warrant prior to inspecting commercial premises. *City of Los Angeles*, 576 U.S. at 420.

Of course, as with any search, no warrant is needed to inspect a commercial premises if the official receives consent. *Id.* at 420.  For most businesses, consent from the owner or other agent who has "common authority" over the areas to be searched is sufficient.  *See Donovan v. A.A. Beiro Const. Co.*, 746 F.2d 894, 900 (D.C. Cir. 1984).

For "residential housing businesses," however, consent is more complicated.  To start, consent from a landlord to inspect a residential rental is not sufficient for a warrantless search. *United States v. Law*, 528 F.3d 888, 904 (D.C. Cir. 2008) ("[A] landlord cannot ordinarily consent to a search of a tenant's home."); *Georgia v. Randolph*, 547 U.S. 103, 112 (2006) ("[A] landlord . . . calls up no customary understanding of authority to admit guests without the

6

consent of the current occupant."). Nor is the landlord's consent necessary. At common law, when a landlord leases a property to a tenant, he grants the tenant "the possessory rights to the leased property for the term of the lease." *Odumn v. United States*, 227 A.3d 1099, 1104 (D.C. 2020) (cleaned up). With this grant, the landlord relinquishes his right to "prohibit persons from coming on the leased property at the invitation of the tenant." *Id.* at 1104–05. And he can no longer reasonably expect privacy in areas under the tenant's exclusive control. *See Shamaeizadeh v. Cunigan*, 338 F.3d 535, 544 (6th Cir. 2003).

Lyle laments that District law contains no protections for "homeowners" who lease their properties. But the Supreme Court has consistently held that "property rights are neither the beginning nor the end" of a Fourth Amendment inquiry. *United States v. Salvucci*, 448 U.S. 83, 91 (1980). "[O]wnership alone does not justify a reasonable expectation of privacy." *Shamaeizadeh*, 338 F.3d at 544. So to obtain consent for an administrative search of a leased-out property, it is not the landlord to whom the government must turn, but the tenant.

The D.C. Code and Municipal Regulations align with this principle. To start, the D.C. Code provision on rental housing requires DOB inspectors to obtain permission from the "tenant of a housing accommodation . . . to inspect that portion of the premises under the tenant's exclusive control." D.C. Code § 42-3509.08(a). If the tenant does not give permission, DOB inspectors "shall not enter that portion of the premises" unless they have "[a] valid administrative search warrant" or "[a] reasonable basis to believe that exigent circumstances require immediate entry into that portion of the premises to prevent an imminent danger to the public health or welfare." *Id*. § 42-3509.08(a)(1), (2).

The D.C. Municipal Regulations also authorize government officials to enter rental properties "at reasonable times to inspect or to perform the duties imposed by the Property

7

Maintenance Code." D.C. Mun. Regs. tit. 12G § 104.3. But like the D.C. Code, the Municipal Regulations provide that code officials "shall not enter [an occupied residential] portion of the premises without first having obtained permission from the tenant or other person of suitable age and discretion who resides there." *Id*. § 104.3.1. If the tenant refuses entry, the code official may apply to the Superior Court for an administrative search warrant. *Id*. § 104.3.3.

To Lyle's chagrin, these provisions do not grant a landlord the right to be notified of such inspections, let alone require the landlord's consent. Yet this is fully consistent with the Fourth Amendment and with traditional expectations of privacy set forth in the common law. The D.C. Code and Municipal Regulations do not authorize warrantless searches outside the well-established exceptions of emergencies or tenant consent. *See* D.C. Code § 42-3509.08(a)(1), (2); *Camara*, 387 U.S. at 539. Lyle may chafe at his tenant's open invitation to DOB inspectors at their residence. But the common law makes clear that "the tenant has the right to invite people onto the premises for any lawful purpose" despite the landlord's objection. *Odumn*, 227 A.3d 1099, 1105 (D.C. 2020).

Setting aside the tenant's consent, the District notes that, as a condition for obtaining a rental housing license, Lyle himself agreed to "allow [DOB] . . . to inspect its housing business premises." D.C. Mun. Regs. tit. 14 § 200.1. Based on this, the District says DOB may inspect a rental unless a "resident or tenant affirmatively refuses entry." MTD at 8. Since the tenant's consent is dispositive, this general waiver adds little. The landlord's consent is neither necessary nor sufficient for a lawful search of an occupied rental. There is one narrow situation in which the landlord's consent may be relevant: a warrantless search of *unoccupied* rental housing. *See, e.g.*, *Dearmore v. City of Garland*, 400 F. Supp. 2d 894, 904 (N.D. Tex. 2005) (holding that housing inspection ordinance violated Fourth Amendment because it did not give "the landlord

8

the opportunity to refuse to consent if the property is unoccupied"). But Lyle does not argue that the D.C. Code or Municipal Regulations permit such warrantless searches, so the Court need not address this issue.[1]

In sum, the Fourth Amendment rights of landlords are constrained by the possessory rights of their tenants. But Lyle is both a landlord and an occupant of the residence. And as an occupant, Lyle has a further expectation of privacy, which exceeds his expectation of privacy as the landlord. *See Burger*, 482 U.S. at 700 ("An expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home.").

Just like any tenant, Lyle has a reasonable expectation of privacy in the common spaces of the home—like his dining room—over which he has non-exclusive control. *See Randolph*, 547 U.S. at 111. But because he shares these spaces with the tenant, he "assume[s] the risk that [his tenant] might permit the common area to be searched." *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974). The Supreme Court has "firmly establish[ed] that police officers may search jointly occupied premises if one of the occupants consents." *Fernandez v. California*, 571 U.S. 292, 294 (2014). And so long as a co-occupant "possesses common authority over [the] premises or effects," his consent "is valid as against the absent, nonconsenting person with whom that authority is shared." *Matlock*, 415 U.S. at 170; *Donovan*, 746 F.2d at 898–99

---

[1] Lyle further argues that the warrantless search was unconstitutional because it was not conducted in accordance with "adequate legislative or administrative standards." Opp'n to MTD (Opp'n) at 5, ECF No. 10. Those comprehensive standards are only necessary, however, when government officials are allowed to conduct inspections of regulated industries without consent. *See Donovan v. Dewey*, 452 U.S. 594, 600 (1981) (holding that the warrantless inspection scheme required by the Mine Safety and Health Act did not offend the Fourth Amendment). Since neither the D.C. Code nor Municipal Regulations authorize warrantless searches absent consent or emergency circumstances, no further constitutional safeguards are necessary.

("Consent effective to validate a warrantless search may be given by a person other than the victim of the search.").

Lyle does not contend that his tenant lacked apparent authority to consent to a search of the common areas or that the inspector entered any portion of the property that was not under control of the tenant.[2]  *See* Compl. ¶¶ 12–15.  Nor does Lyle allege that he was "physically present" and "express[ly] refus[ed]" consent to the search.  *Randolph*, 547 U.S. at 120 ("[A] warrantless search . . . over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident.").  Lyle's after-the-fact objections thus bear no weight.  The lodestar of the Fourth Amendment is "reasonableness," and it would not be reasonable to require government officials to account for the unstated objections of an unknown occupant when an occupant who has apparent authority to consent to a search has let them through the door.  *See Fernandez*, 571 U.S. at 304.

At bottom, Lyle has an expectation of privacy as a resident in his home.  He also has an expectation of privacy as the owner—though a far more limited one.  But in either case, he assumed the risk that his tenant would consent to a search of areas under her apparent control when he entered the lease.  Because Lyle concedes that the tenant consented to the search of areas within her control, he cannot allege any Fourth Amendment violation.

---

[2]  In his Opposition, Lyle argues that the tenant consented to inspection of the "entire home" and not just spaces where she had exclusive control.  But the Complaint makes no allegations suggesting that it was unreasonable for the inspector to believe the tenant had authority over the areas inspected.  *See Law*, 528 F.3d at 904 (holding government officials may rely on assurance of authority to consent to search "if objective circumstances make reliance reasonable").  Because Lyle makes no such allegation in the Complaint, the Court will not consider the expanded assertions in his Opposition.  *Coleman v. Pension Ben. Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000) ("It is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss.").

**B.**

Turn now to Lyle's claim that the District violated his Fifth Amendment due process rights by failing to provide adequate notice of the DOB inspections.[3]  Compl. ¶ 67.

The Fifth Amendment Due Process Clause protects individuals from deprivations of "life, liberty, or property, without due process of law." U.S. Const. amend. V.  "A procedural due process violation occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections." *Atherton v. D.C. Off. of Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009).  To allege a procedural due process claim, Lyle must show "(1) a deprivation, (2) of life, liberty, or property, (3) without due process of law." *Morris v. Carter Glob. Lee, Inc.*, 997 F. Supp. 2d 27, 35–36 (D.D.C. 2013).

Start with Lyle's alleged "liberty interest" in receiving accurate notice of a DOB inspection.  "A liberty interest may arise from two sources—the due process clause itself or state law." *Price v. Barry*, 53 F.3d 369, 370 (D.C. Cir. 1995).  Lyle has identified no case establishing that landlords have a "liberty interest" in receiving notice before government officials conduct a consent search of their property.  But this is no surprise:  Recall that landlords cannot generally limit the ability of their tenants to invite individuals onto their property for lawful purposes. *See Odumn*, 227 A.3d at 1105.  District law is similarly silent on providing notice to landlords—or residents, for that matter.  The D.C. Code and Municipal Regulations require only that the inspector obtain either the tenant's consent or a warrant.  D.C. Code § 42-3509.08(a); D.C. Mun. Regs. tit. 12G § 104.3.1.  In short, accurate notice is a courtesy that likely makes it easier for a

---

[3]  Lyle also alleges that the District violated his Fourteenth Amendment due process rights.  But only the Fifth Amendment applies to the District. *English v. District of Columbia*, 717 F.3d 968, 972 (D.C. Cir. 2013) ("The procedural due process protections under the Fifth and Fourteenth Amendments are the same; however, only the Fifth Amendment applies to the District of Columbia.").

DOB inspector to obtain consent. Nothing in the D.C. Code nor the Constitution suggests that notice is mandatory before an inspection, so long as the inspector obtains proper consent. Indeed, Lyle himself concedes that it is not unlawful for the District to conduct "unannounced warrantless inspections" or "inspections without [him] being present." Opp'n at 5–6. If *unannounced* warrantless inspections are lawful, as Lyle admits, then it does not follow that property owners are entitled to notice.

Though Lyle's claimed "liberty interest" is illusory, he does have a property interest in the $4,716 fine. *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010) ("[F]ines and damages associated with noncompliance qualify as protected property interests."). But Lyle fails to plausibly show that he was denied due process. To the contrary, Lyle received a Notice of Infraction advising him of the basis for the fine. Compl. ¶ 14. And he admits that he had a chance to contest the fine before the Office of Administrative Hearings (OAH), *id*. ¶ 16, which has jurisdiction to adjudicate challenges to DOB infractions, D.C. Code § 2-1831.03(b). At his hearing, Lyle would have had a chance to present evidence and cross-examine witnesses. *See* D.C. Mun. Regs. tit. 1, § 2821.6 (2023). And following a final order from OAH, Lyle had the opportunity to request a new hearing, *id*. § 2828.5, or appeal the decision to the D.C. Court of Appeals, *id*. § 2821.6; *see also* D.C. Code § 1-204.31(a).

These procedures fulfill the Constitution's requirements of "notice and an opportunity to be heard." *English*, 717 F.3d at 972; *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("[S]ome form of hearing is required before an individual is finally deprived of a property interest."). Lyle concedes as much. Still, he argues that he received inadequate process because he could not pursue his constitutional challenges in an OAH hearing. Opp'n at 8–9. Even assuming this is

12

the case, Lyle could have raised his constitutional challenge on appeal. *See Mathews*, 424 U.S. 329 n.10. So Lyle fails to plead a violation of his Fifth Amendment due process rights.[4]

### IV.

The Court acknowledges Lyle's frustration at DOB's lackadaisical approach to noticing inspections. This pattern may raise good governance and customer service concerns, but Lyle does not allege that DOB's irregular notices were a ruse meant to lure him away "for the sake of avoiding a possible objection" to the search. *Randolph*, 547 U.S. at 121. Nor has he otherwise tied this pattern to an actionable violation. So, noticed or not, DOB's consent searches were lawful.

For these reasons, the Court will largely grant the District's Motion to Dismiss. But the Court will deny the District's motion insofar as it requests dismissal with prejudice. Dismissals with prejudice are disfavored in this circuit, and the trial court must find that the allegation of other facts consistent with the challenged pleadings could not possibly cure the deficiency. *See In re Danaher Corp. S'holder Derivative Litig.*, 549 F. Supp. 3d 59, 75 n.12 (D.D.C. 2021). That high standard is not met here.

A separate order will issue today.

Dated: June 14, 2024  TREVOR N. McFADDEN, U.S.D.J.

---

[4] Because the Court finds that Lyle has not plausibly pled violations of his Fourth or Fifth Amendment rights, it need not consider whether the District caused those violations through a policy or custom. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978).